UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TRAMAINE M. SMITH, LEJUAN D. YOUNG          CIVIL NO. 12-2695 (DWF/JSM)
and CHRISTOPHER LINDSEY,

      Plaintiffs,

v.                                                          ORDER

JOHN W. PROSSER, individually,
PROSSER HOLDINGS LLC d/b/a
A.C. Financial, AUTOMOTIVE
RESTYLING CONCEPTS INC. d/b/a Automotive
Concepts, TONI LOPEZ and
JEREMY VANG, individually,

      Defendants.

      JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on before the undersigned upon Defendants' Motion for Replevin Order Compel [Docket No. 56].  Thomas J. Lyons, Jr., Esq. appeared on behalf of plaintiffs; and William H. Henney, Esq. appeared on behalf of defendants.

The Court, being duly advised in the premises, upon all of the files, records, proceedings herein, and for the reasons stated on the record, now makes and enters the following Order.

IT IS HEREBY ORDERED that  Defendants' Motion for Replevin Order Compel [Docket No. 56] is **GRANTED** in part and **DENIED** in part as follows:

1.     Defendants are entitled to possession of the following property: 2005 Cadillac Escalade (VIN 1GYEK63N25R198572); 2003 Cadillac Escalade (VIN 1GYEK63N43R291400), upon posting of the bond required by Paragraph 2.

1

2.      Defendants shall post bond in the amount of $38,847.00 and shall file with this Court the bond and serve upon plaintiffs' counsel a copy of the bond.

3.      Upon filling and service of the bond required by Paragraph 2, Tramaine Smith and Christopher Lindsey shall deliver the property described in Paragraph 1 to the Hennepin County Sheriff of other Sheriff, as appropriate, or to Prosser Holdings LLC, no later than seven (7) days following the date the bond was served upon plaintiffs' counsel.

4.      If Tramaine Smith or Christopher Lindsey do not comply with Paragraph 3, the Hennepin County Sheriff or any other Sheriff, as appropriate, is authorized to take possession of and deliver to Prosser Holdings LLC the property described in Paragraph 1.

5.      Upon taking possession of the property described in Paragraph 1, Prosser Holdings LLC is authorized to immediately dispose of the property.

6.      If the property described in Paragraph 1 is concealed in a building or garage the homes of Tramaine Smith or Christopher Lindsey or any other location and if a public demand by the Sheriff is refused or there is no response, the Sheriff shall cause such building to be broken open and take the property.

7.      Plaintiffs and any other person in active concert or participation with them who receives actual notice of this Order are hereby enjoined from concealing, wasting, selling, dismantling, or otherwise altering the condition of said property.

8.      If plaintiffs fail to comply with this Order, the Court will entertain sanctions against plaintiffs and their counsel, which may include, but are not limited to, monetary

sanctions, a finding of contempt of court, or dismissal of plaintiffs' claims against defendants.

8.      Defendants' request for attorney's fees and costs is denied.

9.      This Order is stayed until December 12, 2013, to allow plaintiffs to post a bond in the amount of $32,372.50 for the property described in Paragraph 1 (or $17,373.75 for the 2005 Cadillac Escalade (VIN 1GYEK63N25R198572) and $14,998.75 for the 2003 Cadillac Escalade.)   On or before, December 12, 2013, plaintiffs shall file with this Court the bond and serve upon defendants' counsel a copy of the bond.  If no bond is filed by December 12, 2013, defendants may proceed with the repossession and disposition of the property described in Paragraph 1.

10.      Defendants are prohibited from disposing of the 2006 Dodge Charger ((VIN 2B3KA43G26H251761) at this time.  Upon filing of an affidavit setting forth the current fair market value of the vehicle, including any aftermarket equipment added to it by Tremaine Smith, the Court will issue an order permitting defendants to sell the car after they file and serve on plaintiffs' counsel a bond in the amount of 150% of the current fair market value of the car and the aftermarket equipment.


Dated:      December 9, 2013


                          s/ *Janie S. Mayeron*
                          JANIE S. MAYERON
                          United States Magistrate Judge

<u>**MEMORANDUM**</u>

I.      **FACTUAL BACKGROUND**

On January 19, 2012, plaintiff Tramaine Smith purchased a 2006 Dodge Charger (VIN 2B3KA43G26H251761) from defendant Automotive Concepts. <u>See</u> Affidavit of Tramaine M. Smith in Support of Motion for Summary Judgment as to Claim for Liquidated Damages Pursuant to Minn. Stat. § 53C.12 Subd. 3 [Docket No. 23], ¶ 2, Ex. 1 (2006 Dodge Charger Retail Installment Contact and Security Agreement ("RICSA")). On the same day, the RICSA was assigned to Prosser Holdings d/b/a A.C. Financial ("Prosser Holdings"). <u>Id.</u>, Ex. 1.  Pursuant to the RICSA, Smith was required to make 48 monthly payments of $416.28. <u>Id.</u> Smith failed to provide proof of insurance and failed to make several payments on the loan, and as a result, defendants had the 2006 Dodge repossessed in September, 2012. <u>See</u> Affidavit of John W. Prosser [Docket No. 33], ¶¶ 10-12; Affidavit of John W. Prosser [Docket No. 58] ("Prosser Aff."), ¶ 11.

On April 19, 2012, Christopher Lindsey, purchased a 2003 Cadillac Escalade from Automotive Concepts (VIN 1GYEK63N43R291400). <u>See</u> Prosser Aff., ¶ 3, Ex. 2 (2003 Cadillac RICSA).  On the same day, the RICSA was assigned to Prosser Holdings. <u>Id.</u>, Ex. 3.  The amount financed was $16,746.29, and the finance charge (based in the interest rate charges) was $9,640.03. <u>Id.</u>, Ex. 2.  Lindsey was to make 48 monthly payments starting on June 19, 2012, in the amount of $550.09. <u>Id.</u>

On May 29, 2012, Smith purchased a 2005 Cadillac Escalade from Automotive Concepts.   (VIN 1GYEK63N25R198572). <u>Id.</u>, ¶ 2, Ex. 1 (2005 Cadillac RICSA).  On the same day, the RICSA was assigned Prosser Holdings. <u>Id.</u>, Ex. 1.  The amount financed was $20,480.42, and the finance charge (based in the interest rate charges)

was $11,163.58.  Id.  Smith was to make 48 monthly payments starting on June 29, 2012, in the amount of $659.25.  Id.

The terms and conditions for both the 2003 and 2005 Cadillac RICSAs provided the following remedy to Prosser Holdings in the event of a default by plaintiffs:

> We may require you make the Property available to us at a place we designate that is reasonable convenient to you and us.
>
> We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.  We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what owe us.

Id., Exs. 1, 2.

Both Smith and Lindsey stopped making payments on the installment contracts and failed to maintain insurance on the vehicles.  Id., ¶¶ 4-6, Exs. 3, 4.  At the time of the hearing, both were 13 months past due on their respective loans.  Id., ¶¶ 9, 10.  The outstanding balance on the Lindsey 2003 Cadillac is $23,166.14, and the outstanding balance on the Smith 2005 Cadillac is $23,166.14.  Id., Exs. 3, 4.  Defendant John Prosser believes that the 2003 Cadillac is in storage in California and the 2005 Cadillac is in storage in Alabama.  Id., ¶¶ 9, 10.

Plaintiffs initiated the present action on October 12, 2012.  See Docket No. 1.  In their Amended Complaint, plaintiffs asserted a number of violations against defendants, including violations of the Minnesota Motor Vehicle Retail Installment Sales Act, Minn. Stat § 53C.01, et seq. ("MMVRISA"), along with violations of (1) RICO; (2) EFTA; (3) Minnesota General Usury Law; (4) Common Law Fraud; (5) Conversion; (6) Wrongful Repossession and Breach of Peace; and (7) FDCPA.  See Am. Compl. ¶¶ 279-338.

For relief, plaintiffs seek return of all monies paid by plaintiffs, return and restoration of the vehicles repossessed or disabled by defendants, statutory penalties and liquidated damages, and attorney's fees and costs.  Id., p. 38.  Defendants filed a counterclaim against plaintiffs asserting plaintiffs are in default on the loan agreements for failing to make the required payments and for failing to maintain insurance, and are  seeking the balance owed on the RICSAs.  See Counterclaim ¶¶ 2, 6 [Docket No. 48].

On  December 6, 2012,  United States District Court Judge Donovan W. Frank entered an Order, upon the parties' stipulation, restraining defendants from selling or otherwise disposing of the 2006 Dodge Charger, "the after-market products and/or the contents therein until further stipulation between" the parties.  See December 6, 2012 Order [Docket No. 15].  This Court reiterated this restraint on February 21, 2013, stating that the Dodge Charger could not be sold or disposed of until further stipulation or "Order of this Court."  See Docket Nos. 41,[1] 42.

## II.    DEFENDANTS' MOTION

Pursuant to Rule 64 of the Federal Rules of Civil Procedure and Minn. Stat. § 565.23, defendants seek a replevin order for the Smith 2005 Cadillac and the Lindsey 2003 Cadillac on the basis that Smith and Lindsey are in breach of their respective RICSAs for failing to make the necessary monthly payments for the past 13 months and failing to maintain insurance on the vehicles, and based on the fact that the RICSAs allow repossession and subsequent sale of the vehicles as a remedy upon default.  See Defendant's Memorandum in Support of Replevin Order [Docket No. 57], pp. 2-3. Specifically, defendants seek an order compelling Smith and Lindsey to disclose the

---

[1]    Docket No. 41 incorrectly stated it was signed on February 21, 2012.  It was signed on February 21, 2013.

locations of the 2003 and 2005 Cadillacs and to turn in their vehicles to defendants; an

order directing any sheriff to take possession of the vehicles and deliver them to

Prosser Holdings; an order directing any sheriff to enter any building by any means to

take the vehicles; an order that plaintiffs and any other third parties who receive actual

notice of the order are enjoined from concealing, wasting, selling, dismantling or

otherwise altering the condition of the vehicles; and an order allowing defendants to sell

the Smith 2006 Dodge, the Smith 2005 Cadillac and the Lindsey 2003 Cadillac.  Id., pp.

4-5.

In opposition to defendants' motion, plaintiffs set out the legal requirements for

obtaining relief under Minn. Stat. § 565.23, and the defenses to such an action:

> To obtain interim relief, the moving party, or "claimant," must
> first, by affidavit, demonstrate facts showing that the
> claimant is entitled to possession of specific items of
> property. Minn. Stat. § 565.23 subd. 1. Next, the claimant
> must post a bond equal to 150 percent of the fair market
> value of the property sought. Minn. Stat. § 565.23 subd. 3
> and Minn. Stat. § 565.25 subd. 1.
>
> However, interim relief should not be granted if the opposing
> party, the "respondent," shows (1) a defense to the claim
> that would ultimately allow the respondent to retain
> possession of the property, (2) that the bond posted by the
> claimant is insufficient to adequately protect the respondent
> if the respondent wins on its defense at trial, and (3) that the
> potential harm to respondent if interim return is required
> would be substantially greater than the potential harm to the
> claimant if interim possession is denied. Minn. Stat. § 565.23
> subd. 3. Unlike the claimant seeking interim relief, the
> respondent does not need to show their defense by affidavit.
> See id. The respondent need only show a defense exists
> that is "a fair basis for litigation and . . . would, if established
> at hearing on the merits, entitle respondent to retain
> possession of the property."  See id.

<u>See</u> Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Replevin Order [Docket No. 63], p. 5.

Then, applying these principles to defendants' motion, plaintiffs first claimed that the motion should be denied because defendants failed to post the necessary bond pursuant to Minn. Stat. § 565.23, which they asserted should be at least $38,847. <u>Id.</u>, pp. 2, 9.

Next, as to Smith's repossessed 2006 Dodge Charger, plaintiffs argued that this Court has already entered an order prohibiting defendants from selling the vehicle and defendants have failed to provide any basis to why this Order should be vacated. <u>Id.</u>, pp. 6-7. Contrary to defendants' assertions, plaintiffs alleged that Smith was current on his payments for the 2006 Dodge Charger when it was repossessed by defendants, without the proper notice required under Minnesota law, and that defendants unlawfully took possession of personal properly affixed to the car. <u>Id.</u>, p. 6. When, as here, "a secured creditor proceeds against collateral in contravention of Minnesota law, a court may 'restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions.'" <u>Id.</u> (quoting Minn. Stat. § 336.9–625(a)). However, if the disposition of the Dodge is ordered, plaintiffs urged the Court to require defendants to post a bond equal to 150% of the value of the car, as "an appropriate term[ ] and condition[ ]" of the interim disposition. <u>Id.</u>, p. 7 (citing Minn. Stat. § 336.9–625(a)).

Plaintiffs did not dispute that they failed to make the necessary payments for the Smith 2005 Cadillac and the Lindsey 2003 Cadillac. Instead, plaintiffs argued that they have asserted claims and defenses that would allow them to retain possession of these vehicles at the conclusion of this action, and they should not have to risk defendants not

paying a judgment far and above the value of the cars, which could be a substantially greater harm than defendants not having possession of the vehicles during the remainder of the case.  Id., pp. 7, 9.

With regard to the Smith 2005 Cadillac, plaintiffs submitted that his claim for fraudulent violations of MMVRISA would result in a complete offset for the amounts owing under the RICSA and therefore would extinguish defendants' security interest in the car.  Id., p. 8 (citing Minn. Stat. § 53C.12, subd. 2).  As to the Lindsey 2003 Cadillac, plaintiffs contended that defendants breached the peace in their efforts to repossess that vehicle by leaving a message at night calling him a "broke ass nigga," in violation of Minn. Stat. § 336.9–609(b)(2), and therefore, defendants' recovery of the vehicle is restrained under Minn. Stat. §336.9–625(a).  Id., p. 8.  Plaintiffs also asserted that any damages Lindsey obtained as a result of emotional distress caused by defendants' actions would offset any money claimed owing by him under the RICSA for the 2003 Cadillac and would extinguish the security interest under which defendants claim a right to this vehicle.  Id., pp. 8-9.

Finally, as to both Smith and Lindsey, plaintiffs maintained that they are entitled to actual out-of-pocket damages —money paid to defendants in reliance on their fraud—which will be trebled under RICO.  Id., p. 9 (citing18 U.S.C. § 1964(c)).

## III.   DISCUSSION

Minn. Stat. § 565.23 provides in relevant part:

> **Subdivision 1. Motion.** A claimant seeking to recover possession of property after service of a summons and complaint but prior to final judgment shall proceed by motion. The motion shall be accompanied by an affidavit which states:

(a) the particular property sought to be recovered by the claimant;

(b) the facts giving rise to claimant's right to possession, referring to the documents, if any, evidencing the claimant's right to possession and the underlying obligation supporting the right;

(c) the facts showing that respondent is wrongfully detaining the property;

(d) if the property being claimed is security for an obligation, the date and the amount of the original obligation, the amount which has been paid by respondent and the amount now owing to claimant;

(e) if the claimant asserts that the respondent is wrongfully detaining the property by reason of a breach of contractual duty other than the failure to pay money, the claimant shall state the specific contractual provision and the facts relating thereto; and

(f) a good faith approximation of the current market value of each item of property being claimed. ….

\*\*\*

**Subd. 3.** Seizure order.  After a hearing, the court shall order seizure of the property from respondent and delivery to claimant if claimant has demonstrated the probability of success on the merits entitling claimant to possession of the property and upon compliance with the bonding requirements set forth in section 565.25, subdivision 1, unless the court makes the following findings:

(a) respondent has shown a defense to the merits of claimant's claim, the defense is a fair basis for litigation and the defense would, if established at hearing on the merits, entitle respondent to retain possession of the property;

10

(b) the interests of respondent cannot be adequately protected by the bond filed by claimant pursuant to section 565.25, subdivision 1, if the property is delivered to the claimant prior to final decision on the merits; and

(c) the harm suffered by the respondent would be substantially greater than the harm which would be suffered by the claimant if the property were not delivered to the claimant prior to final decision on the merits.

\*\*\*

**Subd. 5.** Bond. An order requiring seizure of property may be stayed up to three days to allow the respondent time to post a bond pursuant to section 565.25, subdivision 2.

Minn. Stat. § 565.25 states in relevant part:

**Subdivision 1. Order of seizure of property.** An order for seizure of property from the respondent shall provide that the seizure shall be contingent upon claimant's filing of a bond approved by the court conditioned for the return of the property to the respondent, if a return be adjudged, and for the payment to the respondent of any sum adjudged against the claimant. The bond shall be in an amount which is 1-1/2 times the fair market value of the property seized.

**Subd. 2. Bond.** (a) Except as otherwise provided in paragraph (b) and section 565.251, the respondent may retain or regain possession of the property by filing of a bond approved by the court conditioned that the property shall be delivered to the claimant, if delivery be adjudged, and for the payment to the claimant of any sum adjudged against the respondent. The bond shall be in an amount 1-1/4 times the fair market value of the property or 1-1/2 times the amount of the claimant's claim, whichever is less. An order for seizure may specify a time limitation within which the bond must be filed. ….

With respect to the requirements of Minn. Stat. § 565.23, subd. 1, the Court finds that defendants filed an affidavit adequately identifying the property to be recovered and demonstrating that they are entitled to the Smith 2005 Cadillac and the Lindsey 2003 Cadillac based on the violations of the terms of the RICSAs – default due to non-payment and failure to insure.  See Prosser Aff., Exs. 1.  The Court also finds that defendants have provided the notice required by Minn. Stat. § 565.23, subd. 2[2] to recover possession of the vehicles.   See Docket No. 59.

The Court also finds that plaintiffs have not established: (1) a defense to the merits of defendants' claim; (2) their interest cannot be adequately protected by a bond filed by defendants; and (3) the harm suffered by plaintiffs would be substantially greater than the harm which would be suffered by defendants if the property were not delivered to defendants prior to a final decision on the merits.  See Minn. Stat. § 565.23, subd. 3; see also General Electric Capital Corp. v. JMS Transp., Inc., NO. CIV.03-5494 (PAM/RLE)), 2003 WL 22454459, at *1 (D. Minn. Oct. 23, 2003) (citing Agristor Leasing v. Kjergaard, 582 F. Supp. 39, 41 (D. Minn.1983)).

As stated previously, defendants established that Smith and Lindsey failed to comply with the terms of the RICSAs for the Smith 2005 Cadillac and the Lindsey 2003

---

[2]      Minn. Stat. § 565.23, subd. 2 requires notice to Smith and Lindsey of the date and time of hearing to determine whether the sheriff shall remove from their possession and deliver to defendants the vehicles; the right to appear at the hearing and present defenses and state reasons why the vehicles should not be taken; notification that if the court determines that defendants have a right to have possession of the vehicles while this lawsuit is pending, that Smith and Lindsey have the right to keep the vehicles until the lawsuit is decided if they file with the court a surety bond in the amount computed pursuant to section 565.25 (1-1/4 times defendants' estimate of the value of the vehicles); and notification that if Smith and Lindsey believe the value of the vehicles is overstated, they may ask the court to lower it.

Cadillac.   While plaintiffs' claims may entitle them to relief for defendants' alleged violation of various state and federal statutes or common law, none of their claims constitute a defense to a breach of their respective RICSAs.   For example, Smith asserts that under Minn. Stat. § 53C.12, subd. 2, defendants' alleged violations of MMVRISA would result in a complete offset for the RICSA, and therefore extinguish the security interest, thereby entitling him to the 2005 Cadillac.  This theory has no merit.

In the Amended Complaint, plaintiffs alleged that A.C. Financial committed violations of Minn. Stat. § 53C.02 by conducting the business of sales finance company without a license and that because it knew that it was illegal to conduct the business of a sales finance company, the violations were fraudulent.  See Amended Complaint, ¶¶ 308, 309.  Section 53C.02 provides:

> No person shall engage in the business of a sales finance company in this state without a license therefor as provided in sections 53C.01 to 53C.14 provided, however, that no bank, trust company, savings bank, savings association, or credit union, whether state or federally chartered, industrial loan and thrift company, or licensee under the Minnesota Regulated Loan Act authorized to do business in this state shall be required to obtain a license under sections 53C.01 to 53C.14.

Minn. Stat. § 53C.02(a).

The remedy for the fraudulent violations of § 53C.02 is governed by Minn. Stat. § 53C.12, subd. 2 and 3, which state in relevant part:

> In case of a fraudulent violation of any provision of sections 53C.01 to 53C.14, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages, the whole of the contract due and payable, plus reasonable attorneys' fees.

> Subd. 3. Other violations. In case of a failure to comply with
> any provision of sections 53C.01 to 53C.14, other than a
> fraudulent violation, the buyer shall have a right to recover
> from the person committing such violation, to set off or
> counterclaim in any action by such person to enforce such
> contract an amount as liquidated damages equal to three
> times the amount of any time price differential charged in
> excess of the amount authorized by sections 53C.01 to
> 53C.14 or $50, whichever is greater, plus reasonable
> attorneys' fees.

Minn. Stat. § 53C.12.

Under Minnesota UCC law, a failure to comply with Minn. Stat. § 53C.12 "has only the effect the statute or regulation specifies." Minn. Stat. § 336.9–201(c); see also Hanson v. 5K Auto Sales, LLC, NO. CIV. 10-3094 (ADM/SER), 2011 WL 6755138, at *4 (D. Minn. Dec. 23, 2011) ("The remedies for a violation of Minn. Stat. § 53C.02 do not include rescinding or voiding the underlying contract. Minn. Stat. § 53C.12.").

Thus, even if plaintiffs are successful in proving that defendants have committed a violation of Minn. Stat. § 53C.02, fraudulent or otherwise, plaintiffs are not entitled to have defendants' security interest extinguished and to maintain possession and ownership of the vehicles. In other words, there is nothing in Minn. Stat. § 53C.12 that authorizes the award of the security interest to an aggrieved party. See Minn. Stat. § 336.9–201(c); see also Minn. Stat. § 336.9-609(a) (entitles a secured party possession of all collateral which secures the repayment of its obligations in the event of default).

Likewise, to the extent that Lindsey prevails on his claim for emotional distress damages, the remedy is not possession of the 2003 Cadillac. Any award for such a claim will be redressed through monetary damages. Further, contrary to plaintiffs' contention, replevin of the vehicle is not prohibited under Minn. Stat. § 336.9–625(a), even if as plaintiffs have maintained that defendants "breached the peace" in their

14

efforts to repossess his car by leaving a message at night calling him a "broke ass nigga" in violation of Minn. Stat. § 336.9–609(b)(2).

Under Minn. Stat. § 336.9–609, a party may take possession of collateral after a default "(1) pursuant to judicial process; or (2) without judicial process, if it proceeds without breach of the peace."  Minn. Stat. § 336.9–609(a)(1), (b)(1)-(2).  Section 336.9–625(a) provides:

> (a) Judicial orders concerning noncompliance. If it is established that a secured party is not proceeding in accordance with this article, a court may order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions.

Minn. Stat. § 336.9–625(a).

Notwithstanding the alleged statement by defendants is deplorable, a bald assertion in a memorandum of law about what defendants stated to Lindsey, is not enough for this Court to find that defendants breached the peace so as to preclude their efforts to recover their vehicle.  Further, even assuming that someone on behalf of defendants left an inappropriate message for Lindsey at night, nothing precludes this Court from issuing an appropriate order for replevin through the judicial process as contemplated by § 336.9–609(a)(1), (b)(1).

In sum, the Court finds that plaintiffs have no defense to the replevin of the Smith 2005 Cadillac and the Lindsey 2003 Cadillac.

The Court also finds that a bond filed by defendants in the amount of $38,847 will adequately protect plaintiffs' interests in the Smith 2005 Cadillac and the Lindsey 2003

Cadillac.[3]  What is more, if Smith or Lindsey want to keep their respective cars during the pendency of this litigation, they may post a bond pursuant to Minn. Stat. § 565.25, subd. 2.  See Minn. Stat. § 565.23, subd. 5.  The Court finds that the proper bond amount, pursuant to Minn. Stat. § 565.25, subd. 2, is 125% of the fair market value of the vehicles, which is $32,372.50 for both cars, or $17,373.75 for Smith's car and $14,998.75 for Lindsey's car.[4]

Finally, the Court finds that the interests of defendants in preserving the collateral vehicles, outweighs the interest of plaintiffs being able to retain vehicles they are not paying for and that are not apparently even using.

For all of the reasons stated above, the Court finds that defendants are entitled to a replevin order and will allow them to seize the cars following the posting of the bond in the amount of $38,847, and following seizure of the cars, will allow them to sell the cars. The Court will stay this Order until December 12, 2013, to allow Smith and Lindsey, individually or collectively, to post bond to retain the vehicles during the pendency of this suit.

---

[3]    Plaintiffs' argument that defendants' replevin motion fails because they did not post a bond with the motion is rejected.   Minn. Stat. § 565.23, subd. 3 read in conjunction with § 565.25, subd. 1, requires the posting of the bond after the court orders the seizure of the property.  Further, plaintiffs' counsel's comment at the hearing, that the bond proposed by defendants is not adequate, given that plaintiffs added aftermarket equipment to the vehicles, is not supported by any evidence of such equipment having been added to the cars or the value of such equipment.

[4]    Defendants did not provide to the Court the value of the Smith 2006 Dodge Charger already in their possession.  If defendants want to sell this vehicle, they will have to provide to the Court an affidavit stating the current fair market value of the car including the aftermarket equipment added to the car.  At that time, the Court will issue an order permitting them to sell the car after they put up a bond in the amount of 150% of the current fair market value of the car with the aftermarket equipment.

**III.    CONCLUSION**

Defendants are entitled to repossession of the Smith 2005 Cadillac and the Lindsey 2003 Cadillac, and any loss plaintiffs may incur from the repossession and disposition of these vehicles can be protected by the posting of the bond required by this Court.   Further, if plaintiffs want to retain possession of these cars during the pendency of this case, they may do so by posting their own bond in the amount set by the Court.

J.S.M.